AO 106 (Rev. 04/10) Application for a Search Warrant

US DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FILED

AUG 1 0 2023

Ronald E. Dowling
By_____
Deputy Clerk

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

INFORMATION ASSOCIATED WITH CELLULAR DEVICE ASSIGNED NUMBER 305-985-1138 IN THE CUSTODY OR CONTROL OF AT&T

Case No. 5:23 CM 28

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the ____Western____ District of ____Arkansas____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☐ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 841 (a)(1) | Distribution of a controlled substance |
| 18 USC Section 2 | Aiding and Abetting |
| 21 USC Section 846 | Controlled Substance Conspiracy |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Joshua Weissrock, DUSM
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 10, 2023 @ 9:25 AM

*Judge's signature*

City and state: Fayetteville, Arkansas

Hon. Christy D. Comstock, US Magistrate Judge
*Printed name and title*

US DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

AUG 10 2023

Ronald E. Dowling
By_____
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| INFORMATION ASSOCIATED WITH THE CELLULAR DEVICE ASSIGNED WITH **CALL NUMBER (305) 985-9188** THAT IS IN THE CUSTODY OR CONTROL OF **AT&T** | Case No. 5:23cm28<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT (AND ORDER)

I, Joshua Weissrock, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT AND TECHNICAL BACKGROUND**

1. I am a Deputy U.S. Marshal with the United States Marshals Service and have been since January 2022. I'm currently assigned to the Fayetteville Sub Office located within the Western District of Arkansas. As part of my daily duties as a Deputy U.S. Marshal (DUSM), I conduct fugitive investigations. I have received extensive training in criminal investigations and fugitive tracking and apprehension to include the area of electronic surveillance in the tracking of fugitives.

2. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) and an order under 18 U.S.C. § 3122(a)(1) for information associated with a certain cellular device assigned **Telephone Number (305) 985-9188** ("the Target Cell Phone"), with unknown subscriber on a pre-paid service provider, that is in the custody or control of **AT&T**, a wireless communications service provider that is headquartered at **208 S Akard Street, Suite 2954, Dallas, Texas 75202.** As a

provider of wireless communications service, **AT&T** is a provider of an electronic communications service, as defined in 18 U.S.C. § 2510(15).

3. The information requested and to be searched is described in the following paragraphs and in Attachment A. The Applicant/Affiant seeks the warrant and order to direct **AT&T** to disclose to the government the information further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

4. Among other requests, the Applicant/Affiant seeks authorization for the installation and use of a pen register and a trap and trace device ("pen-trap device") to record, decode, and capture dialing, routing, addressing, and signaling information associated with communications to or from the cellular telephone number described in Attachment A. Because this warrant also seeks the prospective collection of cell-site location information that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) and (4), the requested warrant is designed to also comply with the Pen Register Act for that reason. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

5. The facts in this affidavit come from information obtained from other agents and witnesses. This affidavit is intended to show merely that there is probable cause for the requested warrant -- and supports the government attorney's certification under 18 U.S.C. § 3122(b)(2) that the information sought is relevant to the ongoing criminal investigation -- and does not set forth all of my knowledge about this matter.

6.  Based on the facts set forth in this affidavit, there is probable cause to believe that Angelique DELISE has violated Title 21, United States Code, Sections 841(a)(l) and 846 (conspiracy to distribute fentanyl), and Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(vi), and Title 18, United States Code, Section 2 (aiding and abetting in the distribution of more than 40 grams of a mixture or substance containing fentanyl). DELISE was charged with these crimes on July 25, 2023, by way of Indictment, and is the subject of an arrest warrant issued on July 25, 2023, by the United States District Court for the Western District of Arkansas. There is also probable cause to believe that DELISE is in possession of or utilizing the Target Cell Phone and that the location and other information described in Attachment B will assist law enforcement in arresting DELISE, who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7.  This Court has jurisdiction to issue the proposed warrant and order because it is a "court of competent jurisdiction" as defined in 18 U.S.C. §§ 2711 and 3127. Specifically, the Court is: a district court of the United States that has jurisdiction over the offense being investigated (*see* 18 U.S.C. §§ 2711(3)(A)(i) and 3127(2)(A)(i)).

## PROBABLE CAUSE

8.  The United States Marshals Service (USMS) is conducting an ongoing fugitive investigation to locate DELISE regarding her warrant for drug trafficking violations. On July 25, 2023, a Grand Jury sitting in the Western District of Arkansas issued an Indictment against DELISE that charged her with violations of Title 21, United States Code, Sections 841(a)(l) and 846 (conspiracy to distribute fentanyl), and Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(vi), and Title 18, United States Code, Section 2 (aiding and abetting in the

distribution of more than 40 grams of a mixture or substance containing fentanyl). *United States v. Angelique Delise*, 5:23-CR-50054-004.

9. On June 29, 2023, the Drug Enforcement Administration obtained information through their investigation that DELISE was actively utilizing the target device as of that date. When DELISE was detained during a search warrant on her residence, her phone was taken by DEA Agents. DELISE's phone was returned to her at the completion of the search warrant. Prior to the search warrant, DEA agents identified DELISE utilizing the target device during their criminal investigation on a court authorized wiretap. According to agents with the DEA, there would be no reason for DELISE to believe a federal warrant has been issued for her arrest and she would most likely still be in possession of the device. Deputies have not been able to conduct surveillance on DELISE's last known address due to its location and the amount of foot traffic coming into and out of the residence. On or about July 26, 2023, the DEA designated the United States Marshal's Service to apprehend DELISE, who is considered a fugitive at this time and wanted on the Indictment and warrant issued in Western District of Arkansas Case No. 5:23-CR-50054-004. The United States Marshals Service is seeking to locate DELISE for purposes of apprehension on the outstanding arrest warrant. Accordingly, there is probable cause to believe the information, records, and authorizations sought will aid the United States Marshals Service and Drug Enforcement Administration in the apprehension of DELISE. Thus, the requested information is necessary to determine the location of DELISE and apprehend her.

## PEN REGISTER AND GPS LOCATION BACKGROUND INFORMATION AND REQUESTS

10. Based on my training and experience, I know that a "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information

transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

11.     A cellular telephone, or cell phone, is a mobile device that transmits and receives wire and electronic communications. Individuals using cell phones contract with cellular service providers, such as **AT&T**, who maintain antenna towers ("cell towers") covering specific geographic areas. In order to transmit or receive calls and messages, a cell phone must send a radio signal to an antenna tower that, in turn, is connected to a cellular service provider's network.

12.     In the cellular telephone context, pen registers capture the destination phone numbers of outgoing calls or Short Message Service ("SMS") and Multimedia Message Service ("MMS") messages, while trap and trace devices capture the phone numbers of incoming calls or SMS and MMS messages (the latter of which may include text, photos, or videos). These numbers can then be used to identify the parties to a communication without revealing the communication's contents, and they can be recorded by a pen-trap device.

13.     The dialed telephone numbers that can be captured by a pen register and trap and trace device include "post-cut-through dialed digits," which are numbers dialed after the initial call setup is completed. For example, some post-cut-through dialed digits may be the actual telephone number called, such as when a subject places a calling card, credit card, or collect call by first dialing a carrier access number and then, after the initial call is "cut through," dialing the telephone number of the destination party. In such cases, the final number sequence is necessary

5

to route the call to the intended party and identifies the place or party to whom the call is being made. Should the pen-trap device capture post-cut-through dialed digits that could be considered call content, such as dialed account numbers or passwords, despite the government's use of reasonably available technology to avoid the recording or decoding of such content, the United States will make no affirmative investigative use of such information.

14. A cell phone can also be used to exchange SMS or MMS messages with email accounts. The email addresses associated with those text messages can be recorded by a pen-trap device and used to identify parties to a communication without revealing the communication's contents.

15. The pen-trap device sought by the application will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the cell phone number described in Attachment A, including the date, time, and duration of the communication, and the following, without geographic limit: source and destination telephone numbers; source and destination email addresses, when the cellular device exchanges SMS or MMS messages with an email account; and any unique identifiers, including the Electronic Serial Number ("ESN"), Mobile Electronic Identity Number ("MEIN"), Mobile Identification Number ("MIN"), Subscriber Identity Module ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifier ("IMSI"), or International Mobile Equipment Identity ("IMEI"), associated with the cell phone device or devices used to make or receive calls or send and receive texts with the cell phone number described in Attachment A.

16. Based on my training and experience, I know that **AT&T** is a company that provides cellular communications service to the general public. I also know that providers of

cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (*i.e.*, antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (*i.e.*, faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

17. Based on my training and experience, I know that **AT&T** can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as **AT&T** typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

18. Based on my training and experience, I know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data,

also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data is typically less precise than E-911 Phase II data.

19.  Based on my training and experience, I know **AT&T** can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on **AT&T**'s network or with such other reference points as may be reasonably available.

20.  Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

21.  Based on my training and experience, I know that wireless providers such as **AT&T** typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers

8

such as **AT&T** typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information in both historical and prospective form (such as through a pen-trap) may aid in the apprehension of the named Fugitive by identifying the Fugitive's communication and travel habits, areas to conduct physical surveillance, and those who may be aiding the Fugitive's flight and/or have information regarding the Fugitive's whereabouts.

22.  Based on my training and experience, I know that identifying those with whom the Fugitive communicates, particularly as a Fugitive evades law enforcement, can provide critical information in locating and swiftly and safely apprehending the Fugitive. Such individuals may be relatives, significant others, friends, or business-related contacts, *i.e.*, individuals who are likely to have recent and relevant and material information as to the whereabouts of the Fugitive or other specific and useful information that will aid the government in apprehending the Fugitive. Thus, there is also probable cause to believe that obtaining the subscriber records and the past 30 days of historical transactional session data (including historical cell-site location information) for certain contacts identified from the disclosed historical records or pursuant to the pen-trap sought herein will also aid the United States Marshals Service in identifying the Fugitive's communication and travel habits, areas to conduct physical surveillance, and those who may be aiding the Fugitive's flight and/or have information regarding the Fugitive's whereabouts. Accordingly, the United States Marshals Service seeks a directive that **AT&T** provide it, upon an agent's written request, the subscriber records and 30 days of historical communication session records (from the date requested) for third parties identified by the historical records for and/or pen-trap on the Target Cell Phone and Historical

9

geo-location data by whatever technology or terminology used by the respective Service Provider(s) including, but not limited to, Per Call Measurement Data (PCMD), NELOS, True Call and/or RTT data.

## AUTHORIZATION REQUEST

23. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c)(1)(A) and Federal Rule of Criminal Procedure 41. The proposed warrant will also function as a pen register order under 18 U.S.C. § 3123 authorizing the installation and use of a pen register and/or trap and trace device to record, decode, and/or capture certain information in Attachment B for each communication to or from the Target Cell Phone, to include the date, time, and duration of the communication, and prospective cell-site location information associated with the communication, without geographic limit, for a period of forty-five days (45) days pursuant to 18 U.S.C. § 3123(c)(1). The United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).

24. I further request that the Court direct **AT&T** to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

25. The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order **AT&T** and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of the order to furnish, upon service of the order, information, facilities, and technical assistance necessary to install the pen-trap device, including installation and operation of the pen-trap device unobtrusively and with minimum disruption of normal service. Any entity providing such

assistance shall be reasonably compensated by the United States Marshals Service pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the order.

26. I also request that the Court direct **AT&T** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the location information described in Attachment B unobtrusively and with a minimum of interference with **AT&T**'s services by initiating a signal to determine the location of the Target Cell Phone on **AT&T**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The United States Marshals Service shall reasonably compensate **AT&T** for reasonable expenses incurred in furnishing such facilities or assistance.

27. Because the warrant/order will be served on **AT&T**, who will then compile the requested records at a time convenient to it, and further owing to the potential need to locate the Target Cell Phone outside of daytime hours, as fugitives are unpredictable in where and when they may be found, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. The United States further requests that the Court order that the United States Marshals Service, and the Applicant/Affiant have access to the information collected by the pen-trap devices as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to them, for the duration of the warrant/order for the same reasons.

28. I further request that the Court order **AT&T** and any other person or entity whose assistance may facilitate execution of the warrant/order to provide the United States

Marshals Service, and the Applicant/Affiant prior notice before terminating or changing service to the Target Cell Phone.

29. The United States further requests, pursuant to 18 U.S.C. § 3123(d)(2), that the Court order **AT&T** and any other person or entity whose assistance facilitates execution of the order, and their agents and employees, not to disclose in any manner, directly or indirectly, by any action or inaction, the existence of the pen-trap portion of the application and order, the resulting pen-trap device, or this investigation, unless and until authorized by this Court, except that **AT&T** may disclose the warrant/order to an attorney for **AT&T** for the purpose of receiving legal advice.

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the law enforcement officer executing the warrant to delay any required notice for the location or other information obtained until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. As this matter involves the United States Marshals Service's efforts to swiftly and safely locate and apprehend a federal felon, providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any non-content wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic

information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

31. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant and the Attachments, be sealed until further order of the Court. These documents discuss an ongoing criminal and fugitive investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation, including by giving targets an opportunity to destroy or tamper with evidence, change patterns of behavior, notify confederates, and flee from prosecution.

Respectfully submitted,

_____
Joshua Weissrock
Deputy U.S. Marshal
U.S. Marshals Service

Subscribed and sworn to before me on this 10th day of August, 2023.

_____
HON. CHRISTY D. COMSTOCK
U.S. MAGISTRATE JUDGE

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **(305) 985-9188,** (the "Target Cell Phone"), with unknown subscriber, whose wireless service provider is **AT&T**, a company headquartered at 208 S. Akard Street, Suite 2954, Dallas, Texas 75202.

2. Records and information associated with the Target Cell Phone that is within the possession, custody, or control of **AT&T,** including information about the location of the cellular telephone if it is subsequently assigned a different call number or unique identifier.

## ATTACHMENT B

### Particular Things to be Seized

**I. Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A and B is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following information about the customers or subscribers associated with the Target Cell Phone for the time period **from 30 days before the date of the issuance of the warrant/order to the present;**

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone, short message service ("SMS"), multimedia message service ("MMS"), email (as associated with the SMS or MMS exchanges), and mobile data session connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address);

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records;

ix. Upon a written request from an agent of the United States Marshals Service, made during the 45-day period authorized by this warrant/order, the subscriber records and no more than 30 days of historical transactional session data records (calculated from the date of the written request and including cell-site location information) for specified third-party contacts identified from the disclosure of the historical session records for, or pursuant to the pen-trap on, the Target Cell Phone that is authorized herein.

x. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(B) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received)

b. Dialing, routing, addressing, and signaling information associated with each communication to and from the Target Cell Phone for a period of 45 days from the date of this order, including the following, without geographic limit, provided as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the United States Marshals Service, for the duration of the order:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Source and destination email addresses, when the cellular device exchanges SMS or MMS messages with an email account;

2

    iv. Wire and electronic signaling information, to include mobile data, but not the contents of any communication;

    v. Date, time, and duration of communication; and

    vi. All data about the cell towers (*i.e.*, antenna towers covering specific geographic areas) and sectors (*i.e.*, faces of the towers) to which the Target Cell Phone connects at the beginning and end of each communication

c. All information about the location of the Target Cell Phone described in Attachment A for a period of 30 days from the date of this warrant, provided as soon as practicable, twenty-four hours per day, or at such other times as may be acceptable to the United States Marshals Service, for the duration of the warrant, without geographic limit. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (*i.e.*, antenna towers covering specific geographic areas) and "sectors" (*i.e.*, faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

    i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **AT&T**, **AT&T** is required to disclose the Location Information to the government. In addition, **AT&T** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information, and provision of the pen register and trap and trace data and prospective cell-site location information, unobtrusively and with a minimum of interference with **AT&T** services, including by initiating a signal to determine the location of the Target Cell Phone on **AT&T**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **AT&T** for reasonable expenses incurred in furnishing such facilities or assistance.

   d. The Provider shall provide prior notice to the United States Marshals Service and Applicant/Affiant before terminating or changing service to the Target Cell Phone.

IT IS FURTHER ORDERED pursuant to 18 U.S.C. § 3123(d)(2), that the Provider and any other person or entity whose assistance facilitates execution of the pen-trap order, and their agents and employees, shall not disclose in any manner, directly or indirectly, by any action or inaction, the existence of the pen-trap portion of the order, the existence of the pen-trap, or the investigation to any person, unless and until otherwise ordered by the Court, except that the Provider may disclose the order to an attorney for the Provider for the purpose of receiving legal advice.

## II. Information to be Seized by the Government

All information described above in Section I that will assist in arresting DELISE, who was charged with violating Title 21, United States Code, Sections 841(a)(l) and 846 (conspiracy to distribute fentanyl), and Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(B)(vi), and Title 18, United States Code, Section 2 (aiding and abetting in the distribution of more than 40 grams of a mixture or substance containing fentanyl). DELISE is the subject of an arrest warrant issued on July 25, 2023 by the United States District Court for the Western District of Arkansas and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the

government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.